**BIOVAIL CORPORATION and Biovail Laboratories, Inc., Plaintiffs,**

v.

**MYLAN LABORATORIES, INC. and Mylan Pharmaceuticals, Inc., and Pfizer, Inc., Defendants.**

**No. CIV.A. 1:01CV66.**

United States District Court,
N.D. West Virginia.

May 2, 2003.

Scott D. Clements, Dickie, McCamey & Chilcote, Wheeling, WV, Ronald S. Rauchberg, John Siegal, Stefanie S. Kraus, Jeremy R. Feinberg, Proskauer Rose, LLP, New York City, John A.C. Keith, David J. Gogal, Blankingship & Keith, Fairfax, VA, for Plaintiffs.

Gordon H. Copland, Steptoe & Johnson, Clarksburg, WV, Dawn J. Beto, Morgantown, WV, E. Anthony Figg, Elizabeth Ann Leff, Steven Mark Lieberman, Rothwell, Figg, Ernst & Manbeck, Washington, DC, Megan D. Dortenzo, Steptoe & Johnson, Clarksburg, WV, Roger L. Foster, Morgantown, WV, Richard Cyril Sullivan, Jr., Reed, Smith, Hazel & Thomas, LLP, Falls Church, VA, Sharon L. Davis, Rothwell, Figg, Ernst & Manbeck, Washington, DC, Gerald Sobel, Stephen J. Elliott, Myron Kirschbaum, David S. Copeland, Kaye, Scholer, Fierman, Hays, & Handler, LLP, New York City, Amy Sanborn Owen, Richards, McGettigan, Reilly & West, PC, Alexandria, VA, Milton Sherman, Michael Braff, David Oliver Bickart, John J.P. Howley, Kaye Scholer, LLP, New York City, W. Henry Jernigan, Jr., Ramonda C. Lyons, Dinsmore & Shohl, LLP, Charleston, WV, for Defendants.

### *ORDER AWARDING REASONABLE EXPENSES BUT NOT AWARDING SANCTIONS*

SEIBERT, United States Magistrate Judge.

#### I. *Introduction*

A. *Background.*

Biovail Corporation and Biovail Laboratories, Inc., "Biovail", Plaintiffs, filed this ac-

tion against Mylan Industries, Inc., Mylan Pharmaceuticals, Inc., "Mylan" and Pfizer, Inc., "Pfizer", Defendants, February 22, 2001, in the United States District Court for the Eastern District of Virginia, alleging violations of the anti-trust laws. The action was transferred to this District April 24, 2001. Certain discovery disputes arose and Mylan and Pfizer filed Motions to Compel.[1] The Motions to Compel were granted with ruling reserved on one issue.[2] Biovail was given an Opportunity to be Heard on November 8, 2002 why reasonable expenses and sanctions should not be awarded.

### B. *The Issues.*

1. Whether reasonable expenses should be awarded.

2. Whether sanctions should be awarded.

### C. *Decisions.*

1. Reasonable expenses must be awarded because 1) the movant made a good faith effort to obtain the discovery without court action; 2) there is not only a lack of substantial legal authority justifying Biovail's position, not even one case in the federal courts since the 1993 amendments to the *Fed. R.Civ.P.* that justifies Biovail's responses; 3) not to award reasonable expenses would be unjust because it would reward Biovail's conduct which is absolutely without authority and expressly contrary to *Fed.R.Civ.P.*

2. Sanctions are not awarded this time because a) Biovail acted in good faith in part; b) Pfizer and Mylan were not prejudiced; c) while the need for deterrence is great, d) there may be a less drastic solution.

### II. *The Facts*

Biovail made the following responses to the following discovery requests:

- Mylan's First Set of Interrogatories:

*Interrogatory No. 8*

Identify all Biovail ANDAs which have received final FDA approval since 1995 and for each such ANDA provide the date of final approval and the date of Biovail's entry into the market through commercial sale of the product.

*Response to Interrogatory No. 8*

Biovail objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, harassing and seeks information that is neither relevant to the claims or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence.

- Mylan's First Request for Production of Documents:

Biovail sets forth two and one half pages containing ten general objections.

*Request No. 33*

All documents relating to Biovail's settlement with the FTC concerning Tiazac.

*Response to Request No. 33*

Biovail objects to this request on the grounds that it is overly broad, unduly burdensome, harassing and seeks documents that are neither relevant to the claims or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence.

- Pfizer's First Request for the Production of Documents and Things.

Biovail sets forth two and one-half pages containing eleven general objections.

1. All documents concerning any ANDA or draft ANDA relating to any nifedipine-based drug product (whether filed or prepared by Biovail or a third party), including without limitation all documents concerning communications with the FDA relating to such ANDAs.

*Response to Request No. 1.*

Biovail objects to this request on the grounds that it is overly broad, unduly burdensome and seeks documents that are neither relevant to the claims or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence.

---

1. Doc. Nos. 88 & 89.

2. Doc. No. 100.

## III. *Discussion*

### 1. *Reasonable Expenses.*

 "The great operative principle of Rule 37(a)(4) is that the loser pays." *Rickels v. City of South Bend*, 33 F.3d 785, 786 (7th Cir.1994).

*Fed.R.Civ.P.* 37(a)(4)(A) mandates reasonable expenses if a Motion to Compel is granted after an Opportunity to be Heard **UNLESS**:

* The motion was filed without the movant's first making a good faith effort to obtain the discovery without court action; **OR**

* The losing party's position was substantially justified; **OR**

* The award of expenses would be unjust.

Mylan and Pfizer conferred in good faith. Biovail's responses to the discovery are intentional and wilful and are expressly in violation of the *Fed.R.Civ.P.* Biovail's counsel conceded at the Opportunity to be Heard there was no case that holds its responses are in compliance with *Fed.R.Civ.P.* Substantial justification means to a degree that would satisfy a reasonable person. *Pierce v. Underwood*, 487 U.S. 552, 553, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

Not awarding expenses would be unjust to the prevailing party. Do we reward counsel and a party that respond to a pleading in a manner that is expressly prohibited by *Fed. R.Civ.P.?* The answer is absolutely not. Biovail's contention that reasonable expenses should not be awarded is, at best, disingenuous and, more accurately, patently absurd.

### 2. *Sanctions.*

 This issue cannot be decided quite so easily. However, Biovail's conduct is a lot closer to egregious than its counsel suggests. Biovail is absolutely correct that it did meet and confer and resolve most issues. That demonstrates a prima facie case of good faith. That is not the issue. The issue is whether Biovail and its counsel intentionally and wilfully violated *Fed.R.Civ.P.* by filing a pleading containing general objections that expressly violate the requirements of *Fed. R.Civ.P.*

The problem for courts is this: Parties and counsel file general objections which they know to be improper to force the other side to confer hoping to negotiate down the discovery responses to disclose less information that should be disclosed. This tactic often works because Courts are busy, don't have extra time to focus on discovery disputes and can't decide the discovery disputes soon enough to be of value in the litigation. Of course, the Courts, and the Courts alone are responsible for this state of affairs. Some day, when the Rules Committee and the Courts want to solve this problem, they will simply say:

a) Four figure sanctions will be awarded against each lawyer of record who fails to follow the rules for a first offense. Five figure sanctions against the law firm for a first offense. Five and six figure sanctions against lawyers and their firms, respectively, for a second offense and escalating thereafter by one additional space to the left of the decimal.

b) Five figure sanctions for parties for a first offense. Six figure sanctions for a second offense and escalating thereafter as set forth above.

All but legitimate discovery disputes[3] will disappear.

Of course, when the stars from the big city come to the back waters of West Virginia, they must prove to the local courts that they are smarter and tougher than local judges and therefore are not required to follow any applicable rule, regulation, statute or case.[4] I concede they are all smarter and tougher than I. However, that does not exempt them from complying with *Fed.R.Civ.P.* What they are doing in this process is destroying the

---

3. The rarest of all endangered species.

4. I once, on the record, told a lawyer from Chicago that if he filed the same pleading in a Chicago federal court that he filed here, the Chicago magistrate judge would push him out a window on the top floor of the Sears Tower. That lawyer was, until the entry of this Order, the record holder in dollars of an adverse award of reasonable expenses.

finest legal system ever devised in the history of civilization.

Applying the four part Fourth Circuit test for Rule 37 sanctions set forth in *Belk v. Charlotte–Mecklenburg Bd. of Ed.*, 269 F.3d 305, 347–48 (4th Cir.2001).

- It was bad faith for Biovail to respond to a pleading using general objections. However, Biovail did act in good faith trying to resolve the discovery dispute.

- There was no prejudice to Pfizer or Mylan because they received the information, albeit late.

- The need for deterrence of the particular sort of non-compliance is of the highest magnitude—to stop lawyers from wilfully and intentionally flouting the rules.

- Less drastic sanctions of significant reasonable expenses coupled with a warning should be given a chance to be effective. We shall see.

Mr. Siegal, Biovail's counsel, stated at the Opportunity to be Heard he got the message. I hope so. Because Mr. Siegal did negotiate in good faith as to most issues, and says he heard the message, under the Fourth Circuit Standards, I will not award sanctions this time. But like the criminal defendants that I release pre-trial, you only get one chance. And Mr. Siegal's chance is also the first chance for every other lawyer in this case and in every future case in which they appear. Forewarned is forearmed.

### IV. *Amount of Reasonable Expenses*

Reasonable expenses are to be decided in accordance with prevailing rates in the forum jurisdiction considering the skill level required. This was not rocket science. Biovail filed impermissible responses to discovery requests. However, there may have been a rocket science element since there had to be some discussion of the arcane nuances of the drug manufacturing and anti-trust laws. I must express my admiration for Mr. Kirschbaum, one of Pfizer's counsel, who has sufficient expertise to charge, and presumably collect, $560.00 per hour.[5] Nonetheless, I believe a more reasonable rate for this jurisdiction in this kind of case is $250.00 per hour. This is $100.00 per hour more than what is a prevailing rate in this area.

### V. *Decision*

Biovail and its counsel shall pay Mylan ($250.00 × 49.95 hours) $12,487.50, and shall pay Pfizer ($250.00 × 38.80 hours) $9,700.00, on or before ten (10) days from the date of this Order. Filing of objections does not stay this Order.

Any party who appears pro se and any counsel of record, as applicable, may, within ten (10) days from the date of this Order, file with the Clerk of the Court an original and two (2) copies of the written objections identifying the portions of the Order to which objection is made, and the basis for such objection. Failure to timely file objections to the Order set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Order.

The Clerk of the Court is directed to mail a copy of this Order to parties who appear pro se and any counsel of record, as applicable.

---

**5.** I am reminded of my father's statement to me in the pre-high inflation days of the summer of 1962 when I was working in the steel mill and making what was then the most highly paid labor gang rate in the valley, the exorbitant rate of $2.50 per hour. (I left a job paying $0.85 per hour). On the fourth of July, I was assigned to the tandem mill which rolled double its quota. Therefore, I was paid $20.00 for the day, $20.00 for the holiday, and $40.00 for doubling the quota. My father remarked: "There isn't anybody in America worth $80.00 a day." Of course, if you are some Fortune 500 C.E.O. making $25 million base salary per year, who cannot even afford to pay New York City sales taxes on his art purchases, $560.00 an hour probably looks like a bargain basement rate. I guess it all depends upon which end of the telescope you are looking through.